UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                  :

SHEIKH MUHAMMAD ALI,                :

                             :

                  Petitioner,       :

                             :             20 Civ. 703 (JPC)

       -v-                     :

                             :              <u>OPINION</u>

JEAN KING *et al.*,                :          <u>AND ORDER</u>

                             :

                  Respondents.    :

                             :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Sheikh Muhammad Ali, a native and citizen of Pakistan, was arrested by Immigration and Customs Enforcement ("ICE") and placed in removal proceedings.  Ali was initially detained for approximately eighteen months, but after he sought a bond hearing, the Immigration Judge ("IJ") granted Ali bond and ordered him released pending the resolution of his removal proceedings.  The Board of Immigration Appeals ("BIA") vacated the IJ's decision and determined that Ali should be detained without bond.  Ali then filed this action against the Attorney General, several officials within the Executive Office for Immigration Review, and the Field Office Director of ICE's New York City Field Office (collectively, the "Government")[1] in which he challenges the BIA's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, and the Due Process Clause of the Fifth Amendment to the United States Constitution.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the successors to several of the originally named Defendants have been automatically substituted.  Former Director of the Executive Office for Immigration Review James McHenry has been replaced by Acting Director Jean King.  Former Attorney General William Barr has been replaced by Attorney General Merrick B. Garland.  The Clerk of Court is respectfully directed to update the case caption accordingly.

The Government and Ali brought competing motions for summary judgment. For the reasons stated below, the Court concludes that the basis for the BIA's decision is unclear. Because the BIA failed to set forth a "satisfactory explanation" for its decision to vacate the IJ's bond decision and order Ali detained, the Court grants Ali's motion for summary judgment, denies the Government's motion, vacates the BIA's order, and remands this matter to the BIA for further proceedings.

## I. Background

### A. Factual Background

Ali was born in Gujrat, Pakistan in 1991 and came to the United States in 2000. AR 218, 220.[2] Since 2010, Ali has been arrested nine times in New York. AR 332, 334. His first six arrests, which occurred between 2010 and 2013, were for a variety of crimes, including robbery, assault, and criminal possession of marijuana. AR 332. Each charge stemming from these arrests was ultimately dismissed or no conviction was obtained. *Id.*

In 2014, Ali's then-girlfriend became pregnant, and the two married. AR 82. They briefly moved in together, but "continually argued" and eventually split up. *Id.* One week before the birth of their daughter, Ali agreed to meet his wife at a mall. *Id.* She told police that Ali came to the mall to harm her and their unborn child, but Ali insists that his wife "set [him] up." *Id.* (internal quotation marks omitted). Either way, Ali was arrested and charged with aggravated harassment in the second degree. AR 332, 340. After this, Ali was subjected to an order of protection that required him to "stay away from his wife." AR 82.

On March 29, 2015, Ali was again arrested after another domestic incident. AR 84, 342. This time he was charged with several crimes: (1) criminal contempt, (2) endangering the welfare

---

[2] Citations to the Administrative Record, *see* Dkt. 29, are indicated by "AR".

of a child, (3) harassment, and (4) intentional assault.  AR 342; *see also* AR 334.  He pleaded guilty to intentional assault and was sentenced to six months' imprisonment.  *See* AR 334, 342.  Ali's conviction was vacated on appeal, but he was subsequently convicted of reckless assault.  *See* AR 342.  On January 15, 2017, following another arrest, Ali was convicted of operating a motor vehicle while impaired by drugs.  AR 341; *see also* AR 334.  He was sentenced to six months' imprisonment and fined $500.  AR 334, 341.

On July 21, 2017, the Department of Homeland Security ("DHS") served Ali with a notice to appear, which charged him with being subject to removal pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  AR 56.  On August 7, 2017, ICE detained Ali and determined that he was subject to discretionary detention pursuant to section 236(a) of the INA pending the resolution of his removal proceedings.  AR 58.  In an effort to prevent his removal, Ali filed an application for asylum and protection under the Convention Against Torture.  *See* AR 47.  On February 12, 2018, the IJ denied Ali's application, *see id.*, and the BIA affirmed this decision on July 26, 2018, AR 150-60.  Ali sought review of the BIA's decision by the Second Circuit and filed a motion to stay his removal.  AR 140; *see also* AR 47.

In October 2018, while his Second Circuit appeal was pending, Ali filed a motion to reopen his removal proceedings with the BIA.  AR 166-94; *see also* AR 47-48.  On March 20, 2019, the BIA granted Ali's motion.  AR 22.  Later that month, the Second Circuit dismissed Ali's pending appeal in light of the BIA's decision to reopen his proceedings.  *See Ali v. Barr*, No. 18-2241 (2d Cir. Mar. 29, 2019), Dkt. 82.  Ali's removal proceedings remain ongoing, and it appears his next hearing will not occur until approximately one year from now.  *See* 7/12/2021 Tr. at 30.

**B.  The IJ's Bond Decision**

During much of this time, Ali was detained.  *See* AR 55.  In early December 2018, while his motion to reopen was pending with the BIA, Ali requested a bond redetermination hearing and asked the IJ to release him on bond.  AR 110-30.  The IJ held a bond hearing on January 24, 2019. *See* AR 48, 60.  At the hearing, the IJ determined Ali had met his burden of showing that he was not a danger to the community and thus did not need to be detained.  *See* AR 48.  Ali posted a bond of $30,000 and was released in early February 2019 after being held for approximately eighteen months.  *See* AR 16, 48 n.1.

In a memorandum issued on March 25, 2019, the IJ explained his reasoning.  AR 47-50. The IJ concluded that "[d]espite a 2017 conviction in New York for driving while ability impaired by drugs and a 2015 conviction for contempt and endangering the welfare of a child, along with a number of additional arrests for assault, disorderly conduct, and possession of marijuana, [Ali] met his burden to show that he does not pose a danger to the community."  AR 49.  The IJ "provide[d] context" by explaining that Ali had "suffered as a child due to the death of his mother from cancer" and that Ali "was abused by his father."  *Id.*  The IJ also explained that at times Ali was homeless and addicted to drugs, which led to "most of his criminal activity."  *Id.*  Further, the IJ found that "[n]o one was injured or harmed" during Ali's domestic disputes that led to charges against him and that Ali "was charged with endangering the welfare of a child merely because [his] daughter was present" when he violated the order of protection.  *Id.*

The IJ also noted that Ali submitted evidence showing "that he would be law-abiding upon his release."  *Id.*  Specifically, the IJ pointed to the fact that Ali was taking medication for a severe major depressive disorder and a substance use disorder and had not used illicit substances since he was detained in 2017.  AR 49-50.  The IJ additionally relied on a social worker's representation

4

that Ali would attend counseling and be referred to substance abuse treatment if necessary.  AR 50.
Moreover, the IJ found that Ali would live at a church shelter, would receive support from a non-
profit organization, and intended to find a job to support himself and his father.  *Id.*  In light of this,
the IJ concluded that Ali "met his burden to show that he [was] not dangerous to himself or others
and that he [would] not pose a danger to the community upon his release from custody."  *Id.*  The
IJ found that while Ali presented "some flight risk," that concern was sufficiently addressed by the
required $30,000 bond.  *Id.*

## C.  The BIA Decision

The DHS appealed the IJ's bond decision.  AR 42-44.  On November 4, 2019, the BIA
vacated the IJ's decision and ordered that Ali be detained on no bond.  AR 4-5 ("BIA Decision").

In its decision, the BIA first set forth the applicable standards of review, explaining that it
reviews an IJ's findings of fact under the "clearly erroneous" standard and "questions of law,
discretion, and judgment" *de novo*.  BIA Decision at 1 (internal quotation marks omitted).  The BIA
then explained that the "DHS argue[d] that [Ali] has a very serious criminal record and that the [IJ]
did not cumulatively analyze his criminal record in determining that he is not a danger –
particularly, his 2017 conviction for driving while impaired with drugs, his domestic violence
incidents, his arrest for endangering the welfare of a child, and his violation of an order of
protection."  *Id.*

The BIA then stated that "[c]ontrary to the [IJ's] determination, we conclude that the
respondent should not be released on bond."  *Id.*  The BIA followed this conclusion with two
paragraphs.  It stated:

> In this regard, the DHS argues that the respondent has nine arrests and two
> convictions in the span of 7 years for crimes ranging from assault and robbery to
> criminal sale of marijuana.  The DHS contends that his recent 2017 conviction for
> driving while impaired with drugs is a serious criminal offense -- particularly

5

considering that the respondent admits he has used marijuana daily in the past, and has used cocaine and unprescribed Xanax.  *See Matter of Siniauskas*, [27 I. & N. Dec. 207, 207-08] (BIA 2018) (holding that driving under the influence is a significant adverse consideration in determining whether an alien is a danger to the community in bond proceedings); *see also Begay v. United States*, 553 U.S. 137, 141 (2008).  While the [IJ] believed that the respondent has demonstrated sufficient rehabilitation, the DHS also observes that the respondent's driving while impaired occurred after his 31-day rehabilitation program and that his illicit drug use ceased only upon his 2017 detention (IJ at 4; Respondent's Exhs. A, B).  *See Matter of Garcia Arreola*, [25 I. & N. Dec. 267] (BIA 2010); *Matter of Roberts*, [20 I. & N. Dec. 294, 303] (BIA 1991) (noting that an alien's "assurances" alone are not sufficient to "show genuine rehabilitation").

The DHS also argues that the respondent demonstrated continued contempt for criminal laws when he violated probation and violated an order of protection for his violent acts toward his family members, which the DHS contends makes the respondent a danger to the community.  *See generally Matter of Thomas*, [21 I. & N. Dec. 20, 21-22] (BIA 1995) (holding that evidence of unfavorable conduct may be considered).  Additionally, in finding the respondent not to present a danger, the [IJ] relied on factors that relate to flight risk such as evidence of his good character and family and community ties as mitigating factors in the respondent's case (IJ at 3-4).  *See Matter of Siniauskas*, [27 I. & N. Dec. at 207] (holding that, in determining bond, an [IJ] should consider the nature and circumstances of the alien's criminal activity, including any arrests and convictions, but evidence of family and community ties generally does not mitigate dangerousness).

*Id.* at 1-2.

The BIA concluded its decision by saying, "In sum, we agree with the DHS that the serious nature, recency and nature of the respondent's criminal convictions (as detailed in the bond record) indicate a danger to the community."  *Id.* at 2.  It thus "reverse[d] the [IJ's] conclusion that [Ali] is not a danger" and ordered that Ali be "detained on no bond."  *Id.*

**D.  Procedural History**

On January 27, 2020, Ali initiated this action by filing a petition for a writ of prohibition and mandamus and a complaint for declaratory and injunctive relief.  Dkt. 1 ("Petition" or "Pet.").  Ali says that the BIA's decision that ordered him detained violates the APA, the Mandamus Act, and the Due Process Clause of the Fifth Amendment.  *Id.* ¶¶ 56-76.  Specifically, the Petition alleges

that: (1) the BIA's decision violates the APA; (2) the BIA's decision violates the Mandamus Act; (3) the BIA's decision violates the Due Process Clause; and (4) the Court should issue a writ of prohibition preventing ICE from re-arresting and re-detaining Ali because doing so would violate the Due Process Clause. *Id.* ¶¶ 56-85.  On April 1, 2020, the Government informed the Court that ICE would not re-arrest Ali during the pendency of this action unless Ali was arrested and charged with a new criminal offense.  Dkt. 24.  The Government answered Ali's Petition on May 6, 2020, Dkt. 26, and filed the Administrative Record on August 21, 2020.  Dkt. 29.  This case was reassigned to the undersigned on September 29, 2020.

On October 5, 2020, the Government filed a motion for summary judgment, Dkt. 30, and a memorandum of law in support of that motion, Dkt. 31 ("Government's Motion").  On November 19, 2020, Ali filed a cross motion for summary judgment, Dkt. 34, and a memorandum of law in support of his motion and in opposition to the Government's motion, Dkt. 35 ("Ali's Motion").  Having abandoned his requests for a writ of prohibition or mandamus, Ali seeks summary judgment only on his APA and due process claims.[3]  The Government filed a reply brief in support of its motion and in opposition to Ali's cross-motion on December 21, 2020, Dkt. 40, and Ali filed a reply brief in support of his motion on January 20, 2021, Dkt. 41.  The Court held oral argument on

---

[3] At oral argument, Ali's counsel confirmed that Ali has abandoned his request for a writ of mandamus.  *See* 7/12/2021 Tr. at 4, 30-31.  As noted, Ali's Petition also sought a writ of prohibition.  A writ of prohibition is a traditional common law writ that is an "extraordinary" remedy that "should be exercised only when the right asserted is clear and unequivocal." *Abrams v. McGohey*, 260 F.2d 892, 894 (2d Cir. 1958); *accord Univ. of Tex. v. Vratil*, 96 F.3d 1337, 1339 (10th Cir. 1996).  The writs of mandamus and prohibition are "fraternal twins, evaluated under an identical standard."  16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3932.2 n.4, at 612 (3d ed. 2012).  As a technical matter, "[m]andamus may seem more appropriate if the form of the order is to mandate action, and prohibition if the order is to prohibit action." *Id.* § 3932.2, at 611.  Because Ali's Motion does not mention his request for a writ of prohibition, and his counsel said nothing of it during oral argument, Ali has also abandoned this request.

the parties' motions on July 12, 2021.

## II.  Legal Standard

"Where, as here, a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal, and [t]he entire case on review is a question of law." *Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015) (alteration in original) (internal quotation marks omitted).  Summary judgment is "generally appropriate" for APA claims as "[t]he question whether an agency's decision is arbitrary and capricious . . . is a legal issue amenable to summary disposition." *Id.* (alteration in original) (internal quotation marks omitted).

A district court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.  Statutory and Regulatory Framework for Bond Determinations

To understand the Court's task here, it is helpful first to survey the framework for bond determinations in immigration proceedings.

### A.  IJ Decision

The INA "has provided for discretionary detention pending removal proceedings since it was enacted in 1952." *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020).  While detention is mandatory in certain circumstances, *see* 8 U.S.C. § 1226(c), in many cases, the Attorney General may release an alien on bond pending a decision on whether the alien must be removed from the United States, *id.* § 1226(a).  The Attorney General has delegated the authority to make bond determinations to IJs.  *See* 8 C.F.R. §§ 1003.19, 1236.1.  Under BIA precedent, "[t]he burden is on

the alien to show to the satisfaction of the [IJ] that he or she merits release on bond." *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).  While an IJ has "broad discretion" over which factors to consider when determining whether to grant bond, in general the IJ must consider whether the alien "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.*

## B.  BIA Review

An alien or the Government may appeal an IJ's bond decision to the BIA.  *See* 8 C.F.R. § 1003.19(f); 8 C.F.R. § 1003.38.  On appellate review of an IJ's decision, the BIA does not "engage in *de novo* review of findings of fact determined by an [IJ]."  8 C.F.R. § 1003.1(d)(3)(i).  Instead, "[f]acts determined by the [IJ], including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the [IJ] are clearly erroneous." *Id.*; *accord Wu Lin v. Lynch*, 813 F.3d 122, 129 (2d Cir. 2016) ("[W]hen the BIA reviews an IJ's findings of fact, it must accept them unless they are clearly erroneous.").  Similarly, the BIA must not "engage in factfinding" of its own.  8 C.F.R. § 1003.1(d)(3)(iv)(A).  The BIA violates this directive when it reverses the IJ "*not* on the basis of having found clear error, but instead based on disputed material facts with respect to which the IJ reached no resolution, and which the BIA analyzed in such a way as to constitute independent factfinding." *Padmore v. Holder*, 609 F.3d 62, 68 (2d Cir. 2010) (per curiam) (internal citation omitted).

Despite these limitations on factual determinations, the BIA "may review questions of law, discretion, and judgment and all other issues in appeals from decisions of [IJs] *de novo*." *Id.* § 1003.1(d)(3)(ii).  Thus, the ultimate question of whether an alien should be detained because he or she poses a danger to the community is a discretionary judgment that the BIA reviews *de novo*. *Matter of Garnica-Ramirez*, 2010 WL 1250990, at *1 (BIA Mar. 2, 2010).  *De novo* review of such

questions "must involve consideration of the underlying facts." *Wallace v. Gonzales*, 463 F.3d 135, 141 (2d Cir. 2006). As such, "a review of the factual record by the BIA does not convert its discretionary determination . . . into improper factfinding." *Id.*

## C. Federal Court Review

In general, a federal court may review agency action under the APA unless "statutes preclude judicial review" or the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). When review is proper, a court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

A federal court's review of a BIA decision is limited by statute. The INA provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). This section thus "specifically divests this Court of jurisdiction to review the decisions of the IJ and the BIA (acting on behalf of the Attorney General) regarding detention of aliens under section 1226 . . . including the determination that [an alien] must be detained pending a decision on whether he should be removed." *Hamilton v. Shanahan*, No. 09 Civ. 6869 (SAS), 2009 WL 5173927, at *3 (S.D.N.Y. Dec. 30, 2009); *accord Gomez v. McHenry*, No. 19 Civ. 7373 (JPO), 2020 WL 6381959, at *2 (S.D.N.Y. Oct. 30, 2020) ("[Section] 1226(e) precludes jurisdiction . . . when [an alien] challenges the BIA's 'weighing [of] factors relevant to the grant or denial of discretionary relief.'" (quoting *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006) (third alteration in original)).

However, "[t]he Supreme Court has made clear that § 1226(e) does not preclude challenges to 'the extent of the Government's detention authority under the statutory framework as a whole.'"

*Velasco Lopez*, 978 F.3d at 850 (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018)).[4]  In

other words, section 1226(e) "does not insulate the BIA's bond decisions from purely legal

challenges."  *Gomez*, 2020 WL 6381959, at *2.  Thus, the Court may review whether the BIA

applied the correct standard of review.  *See Wu Lin*, 813 F.3d at 130-31; *Gomez*, 2020 WL 6381959,

at *3 ("The Court has jurisdiction over [the plaintiff's] APA claim insofar as it actually addresses

the BIA's failure to review the IJ's factual findings for clear error.").

## IV.  Discussion

Ali argues that the BIA erred because it "conducted its own *de novo* fact finding and did not

engage in clear error review of the [IJ's] fact finding, as is required by 8 C.F.R. § 1003.1(d)(3)(i)."

Ali's Motion at 7.  This amounts to a legal challenge to the BIA's decision, rather than a dispute

over the BIA's use of discretion, so the Court has jurisdiction to consider this argument.  *See Wu*

*Lin*, 813 F.3d at 130-31; *Gomez*, 2020 WL 6381959, at *3.

Specifically, Ali contends that the BIA "improperly vacated without finding clear error"

three of the IJ's findings of fact.  Ali's Motion at 8.  They are the IJ's conclusions that: (1) "most

of [Ali's] criminal activity" was related to his homelessness and drug addiction; (2) "[n]o one was

injured or harmed" when Ali violated his protection order; and (3) Ali "would be law-abiding upon

his release" based on the IJ's findings regarding Ali's mental health and substance addiction.  *Id.*

(quoting AR 49); *see also* Pet. ¶¶ 38-69.  Ali also identifies "several new facts" that he claims the

BIA found by engaging in impermissible factfinding.  Ali's Motion at 13.  They include that:

(1) Ali's 2017 conviction for driving while impaired with drugs was especially serious because he

---

[4] Although this statement of law in *Velasco Lopez* comes from a part of *Jennings* that only
a plurality of the Supreme Court joined, it does not seem to be reasonably in dispute.  *See Demore*
*v. Kim*, 538 U.S. 510, 516 (2003).  And at oral argument, the Government conceded that "the legal
issue of did the BIA, in fact, apply clear error review" is not barred by section 1226(e).  7/12/2021
Tr. at 19.

"admit[ted] he has used marijuana daily in the past, and has used cocaine and unprescribed Xanax," (2) Ali's "driving while impaired occurred after his 31-day rehabilitation program," and (3) Ali "demonstrated continued contempt for criminal laws when he violated probation and violated an order of protection for his violent acts toward his family members." *Id.* (quoting BIA Decision at 1-2).

The Government argues that the BIA did not disregard the IJ's factual findings or engage in its own factfinding. *See* Government's Motion at 11-15. Instead, the Government contends that the BIA exercised its discretionary judgment in determining that Ali should be detained and thus the decision is beyond the Court's review pursuant to section 1226(e). Government Motion at 13-15.

When rendering a decision, an administrative agency must set forth the basis on which it relies "with such clarity as to be understandable." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." *Id.* at 196-97. Therefore, when reviewing BIA decisions in other contexts, courts routinely remand to the BIA for clarification if the basis for the BIA's decision is unclear. *See Abbas v. Ashcroft*, 126 F. App'x 38, 39 (2d Cir. 2005) ("We . . . ordinarily remand where the basis of the BIA's decision is unclear."); *Kadia v. Holder*, 557 F.3d 464, 468 (7th Cir. 2009) ("We cannot affirm the BIA if the basis for its decision is unclear."); *Halo v. Gonzales*, 419 F.3d 15, 19 (1st Cir. 2005) (remanding to the BIA because the BIA "offered no explanation" for its decision and thus the reviewing court could not "rely on that ground for an affirmance"); *Kayembe v. Ashcroft*, 334 F.3d 231, 238 (3d Cir. 2003) ("When deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can

further explain its reasoning."); *see also Chen v. Mukasey*, 268 F. App'x 105, 107 (2d Cir. 2008) ("It is unclear, on the current state of the record, whether the BIA engaged in additional fact-finding . . . .  It is also unclear whether the [BIA] engaged in a *de novo* review of the IJ's factual findings."); *Garcia-Andrade v. Holder*, 395 F. App'x 417, 418 (9th Cir. 2010) ("Where, as here, it is unclear whether the BIA based its decision on reviewable grounds, unreviewable grounds, or both, we must remand for the agency to clarify that basis of its decision.").

The Court is guided by these authorities in its assessment of Ali's APA claim.  An agency's decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Nat. Res. Def. Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  At the same time, "so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may be reasonably discerned."  *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007); *accord J. Andrew Lange, Inc. v. F.A.A.*, 208 F.3d 389, 391 (2d Cir. 2000).

But here, the BIA failed to set forth a "satisfactory explanation" of its decision and thus the Court cannot "reasonably . . . discern[]" the "path to [the BIA's] conclusion."  *Karpova*, 497 F.3d at 268.  Ali points to three supposed new factual findings made by the BIA, Ali's Motion at 13, but ignores that the BIA discussed each one only in the context of reciting the Government's arguments on appeal.  Ali seems to assume that the BIA implicitly adopted these arguments as its own findings.

13

The Court is not convinced because the BIA's decision simply does not make clear whether it was adopting each of the DHS's specific arguments or otherwise making factual findings as to any of these points.

On one hand, the BIA repeatedly preceded these grounds favoring detention with language along the lines of, "the DHS argues,"[5] suggesting that the BIA was merely reciting arguments presented by the DHS. On the other hand, however, the BIA concluded its decision with: "In sum, we agree with the DHS that the serious nature, recency and nature of [Ali's] criminal convictions (as detailed in the bond record) indicate a danger to the community." BIA Decision at 2. The phrase, "[i]n sum," suggests that the BIA was referencing and presumably adopting the DHS's arguments in favor of detention that it detailed in the preceding paragraphs. And the "we agree with the DHS" language could suggest that the BIA was in agreement with the arguments (including their underlying factual premises) made by the DHS. Yet the BIA's reference to information that was "detailed in the bond record" that led to its danger to the community finding might suggest that the BIA relied solely on the administrative record in conducting a *de novo* review of the IJ's discretionary bond determination. Simply put, the cryptic language used by the BIA makes it

---

[5] *See* BIA Decision at 1 ("The DHS argues that [Ali] has a very serious criminal record and that the [IJ] did not cumulatively analyze his criminal record in determining that he is not a danger – particularly, his 2017 conviction for driving while impaired with drugs, his domestic violence incidents, his arrest for endangering the welfare of a child, and his violation of an order of protection (DHS's Br. at 1-7)."); *id.* ("[T]he DHS argues that [Ali] has nine arrests and two convictions in the span of 7 years for crimes ranging from assault and robbery to criminal sale of marijuana."); *id.* ("The DHS contends that his recent 2017 conviction for driving while impaired with drugs is a serious criminal offense -- particularly considering that [Ali] admits he has used marijuana daily in the past, and has used cocaine and unprescribed Xanax."); *id.* at 2 ("While the [IJ] believed that [Ali] has demonstrated sufficient rehabilitation, the DHS also observes that [Ali's] driving while impaired occurred after his 31-day rehabilitation program and that his illicit drug use ceased only upon his 2017 detention."); *id.* ("The DHS also argues that [Ali] demonstrated continued contempt for criminal laws when he violated probation and violated an order of protection for his violent acts toward his family members, which the DHS contends makes [Ali] a danger to the community.").

impossible for this Court to conduct a meaningful review of the BIA's decision or determine whether the BIA engaged in its own factfinding.

The BIA's decision here thus is unlike the one that was before the court in *Gomez v. McHenry*, 2020 WL 6381959, where the BIA plainly arrived at its own factual findings that contradicted those of the IJ.  In that case, the Honorable J. Paul Oetken held that the BIA erred because it disregarded two of the IJ's factual findings without explaining why they were clearly erroneous.  First, the IJ credited the alien's representations that his 2016 arrest arose from a dispute with his landlady, not his partner.  *Id.* at *4.  The BIA ignored this and instead noted that "[w]hile [the alien] claim[ed] that the charges . . . involved a dispute with his landl[ady] (and not his partner), he did not submit any documentary to support his claim."  *Gomez v. McHenry*, No. 19 Civ. 7373 (JPO) (S.D.N.Y.), Dkt. 1-3 at 2.  Judge Oetken explained that "[a]lthough the IJ made no adverse credibility finding against [the alien] and chose to credit his representations, the BIA on its own accord cast doubt on the IJ's finding regarding the 2016 arrest."  *Gomez*, 2020 WL 6381959, at *4.  Judge Oetken held that this was "not enough" for clear error review because "[t]he BIA did not identify any inconsistency between the IJ's finding and other record evidence, or even attempt to explain why the IJ's finding was mistaken."  *Id.*  The BIA in *Gomez* also "discounted the IJ's finding that [the plaintiff] had established genuine rehabilitation" by citing the "lack [of] objective documentary evidence on the matter."  *Id.* (alteration in original) (internal quotation marks omitted).  But again, the BIA "did not explain why the IJ was wrong to rely on" certain evidence in the record, including the plaintiff's own recollection and another individual's affidavit.  *Id.*

When the BIA reverses an IJ bond determination, it may do one of two things.  The BIA may conclude that one or more of the IJ's factual findings were clearly erroneous and explain its basis for reaching that conclusion.  *See* 8 C.F.R. § 1003.1(d)(3)(i); *Wu Lin*, 813 F.3d at 129.  Or it

may determine that none of the IJ's factual findings were clearly erroneous but, upon *de novo* review of the IJ's discretionary judgment as to those findings or other undisputed matters in the record, *see* 8 C.F.R. § 1003.1(d)(3)(ii), it may conclude that the IJ reached the wrong result.  *See, e.g.*, *Guevara v. Gonzales*, 472 F.3d 972, 975 (7th Cir. 2007) (concluding that the BIA properly exercised *de novo* review over a discretionary matter when the BIA's decision noted that "the [IJ] sufficiently set forth the positive and negative factors presented," the BIA "adopt[ed] those findings," and "upon weighing those factors," the BIA held that it disagreed with the IJ and that the respondent did not merit discretionary relief).  Either way, the BIA must be sure that it does not analyze facts "in such a way as to constitute independent factfinding."  *Padmore*, 609 F.3d at 68.

But the BIA's decision here—unlike the one in *Gomez*—does not make clear whether the BIA relied on new facts, making it impossible for this Court to determine whether the BIA engaged in impermissible factfinding.  Without a "satisfactory explanation" from the BIA that allows this Court to "reasonably . . . discern[]" the BIA's "path to its conclusion," *Karpova*, 497 F.3d at 268, the BIA's decision reversing the IJ cannot survive an arbitrary and capricious analysis under the APA.  *See WMI Liquidating Tr. v. FDIC*, 110 F. Supp. 3d 44, 54 (D.D.C. 2015) (remanding to the relevant agency because the agency's decision "convey[ed] the perception of arbitrary and capricious decisionmaking").  The Court thus vacates the BIA's decision and remands this matter so that the BIA can clarify the basis for its decision.[6]

---

[6] Because the Court concludes that the basis for the BIA's decision was unclear and failed to provide a satisfactory explanation for its decision, it does not reach Ali's argument that the BIA also violated the APA by "misstat[ing] the law on bond redeterminations."  Ali's Motion at 8.  The Court also does not reach whether the BIA's decision violated due process.  However, with regard to the due process claim, the Court notes that at least one court in this District has suggested that an order to detain an alien in a similar context likely ran afoul of *Velasco Lopez*, 978 F.3d 842.  *See Gomez*, 2020 WL 6381959, at *5 n.1.

## V.  Conclusion

For the reasons stated, the Government's motion for summary judgment is denied, and Ali's motion for summary judgment is granted.  The BIA's November 4, 2019 decision is vacated, and this matter is remanded to the BIA for further proceedings consistent with this Opinion and Order. The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 30 and 34 and close this case.

SO ORDERED.

Dated: August 18, 2021
       New York, New York

_____
JOHN P. CRONAN
United States District Judge